UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION LIMITED, a foreign limited liability corporation,<br><br>Plaintiff,<br><br>v.<br><br>OSPREY UNDERWRITING AGENCY LIMITED, AND ITS CERTAIN UNDERWRITERS, a foreign unincorporated entity and/or corporation, and AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., a New York corporation,<br><br>Defendant. | Case No. C15-43 RSM<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR STAY |

This matter comes before the Court upon Motion to Dismiss for Forum Non Conveniens or to Stay by Defendant Osprey Underwriting Agency Limited ("Osprey"). Dkt. # 13. Also pending is Plaintiff's Motion to Strike filed in its opposition brief. Dkt. # 20, p. 20. No party has requested oral argument and the Court deems it unnecessary. Having considered the parties' moving papers and supporting exhibits, as well as the remainder of the record, the Court DENIES both Motions for the reasons stated herein.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR STAY – 1

## BACKGROUND

This case is an insurance coverage dispute between three insurers: Plaintiff Steamship Mutual Underwriting Association Limited ("Steamship Mutual") and Defendants Osprey and American Steamship Owners' Mutual Protection and Indemnity Association, Inc. ("The American Club"). Steamship Mutual and Osprey are both English insurers, with their headquarters and principal places of business in England, while The American Club is a New York corporation. Dkt. # 15 ("Tobin Decl."), ¶ 3; Second Amended Complaint, Dkt. # 24 ("SAC"), ¶¶ 1.1- 1.3; Dkt. # 25, ¶ 1.3. The three insurers issued successive marine liability insurance policies to Shelford Boats Limited ("Shelford"), a Washington limited liability company that owns and operates the Fishing Vessel Aleutian Lady.[1] SAC at ¶¶ 3.2-4.1. Steamship Mutual provided coverage for the period February 20, 2006 to February 20, 2011, Osprey for the period February 20, 2011 to February 20, 2013, and The American Club for the period February 20, 2013 to February 20, 2014. *Id.* at ¶¶ 3.2.-3.4.

This coverage action arises out of injuries incurred by Mauricio Sanchez while employed by Shelford. In June 2010, Mr. Sanchez was allegedly injured while working aboard the F/V Aleutian Lady. SAC at ¶ 4.1. Mr. Sanchez underwent surgery to repair the injury and in 2011 made a claim to Shelford for medical expenses. *Id.* at ¶ 4.2. Shelford tendered Mr. Sanchez's claim to Steamship Mutual on September 2, 2011, which Steamship Mutual accepted without reservation. *Id.* Mr. Sanchez returned to work, whereupon he allegedly suffered a second injury in early 2013 while again working aboard the F/V Aleutian Lady. *Id.* at ¶ 4.3. According to Plaintiff, this latter injury occurred during the period of coverage provided by either Osprey or The American Club. *Id.*

Mr. Sanchez filed suit against Shelford in Snohomish County Superior Court on May 2, 2013 for injuries he sustained in both June 2010 and in early 2013. *See* Dkt. # 14 ("Allen Decl."), Ex. B; SAC at ¶ 4.4. The lawsuit was initially tendered only to Steamship Mutual, which paid for Shelford's defense. *Id.* at ¶ 4.5. However, on March 4, 2014, Shelford, via its Seattle-based claims adjuster Polaris, notified Osprey and The American Club that Mr.

---

[1] Steamship Mutual and Osprey dispute whether their respective policies were brokered in England or in Washington. *See* Tobin Decl. at ¶¶ 4,6; Dkt. # 20 (Plaintiff's Opposition Brief) at p. 3 (asserting, without factual support, that Shelford purchased its policies through Seattle-based insurance broker Wells Fargo Insurance Services).

Sanchez was alleging that he suffered a new injury in 2013, which could trigger coverage obligations under their policies. *Id.* at ¶ 4.6; Allen Decl. at Ex. C. Osprey initially responded to the notice by asserting that it "would appreciate directing operations at this stage given that the claimant is alleging a new injury and that it falls within one of the Osprey Policy years." Dkt. # 21 ("Powell Decl."), Ex. 1. That same day, Osprey wrote back to Polaris that it would prefer that Steamship Mutual retain direction of the claim but that Osprey would "step up" if the evidence showed the Mr. Sanchez was injured during an Osprey policy year. *Id.* at Ex. 3. Finally, on March 6, 2014, Osprey wrote to its Washington claims broker, Wells Fargo Insurance Services, that it had determined to reserve its coverage position upon determining that Mr. Sanchez's claim was made solely in respect to the 2010 injury, and that the 2013 injury was merely an aggravation thereof. *Id.* at Ex. 4, p. 3.

On September 25, 2014, counsel for Shelford wrote to the three insurers threatening to bring a lawsuit under Washington's Insurance Fair Conduct Act ("IFCA") if they refused to defend and indemnify. Counsel specifically asserted that "*the allegations in the Underlying Action trigger all three Assurer's duties—jointly and severally—to defend and reimburse.*" Powell Decl. at Ex. 5, p. 25 (emphasis in original). Mr. Sanchez settled his claims against Shelford on November 5, 2014. SAC at ¶ 4.11. Ultimately, Steamship Mutual agreed to reimburse Shelford for all expenses incurred, while Osprey and the American Club declined to do so. *Id.* at ¶ 4.9.

Steamship Mutual filed this lawsuit against Osprey and The American Club on January 9, 2015, and Osprey was served with summons and complaint on February 20, 2015. *See* Dkt. # 1; Tobin Decl. at ¶ 10. Steamship Mutual seeks a declaratory judgment establishing that both Osprey's and The American Club's defense and indemnity obligations were triggered by the underlying litigation. SAC at ¶ 5.2. The operative complaint asserts additional causes of action for contribution, equitable contribution, and unjust enrichment against both Defendants. *See* SAC. On February 9, 2015, Osprey served upon Steamship Mutual its own declaratory judgment action filed in the High Court of Justice in London, Queen's Bench Division, seeking the English Court's declaration that Steamship Mutual is entitled to neither contribution nor restitution for expenses arising out of its provision for the defense against Mr. Sanchez's lawsuit. Tobin Decl. at Ex.'s C & D.

Through the instant Motion, Osprey seeks dismissal of all claims against it on the basis of *forum non conveniens* or, alternatively, a stay of these proceedings pending resolution of the action before the English High Court of Justice. Dkt. # 13. Osprey asserts that the gravamen of the claims against it rests in England, where both companies are headquartered, where documents and witnesses relevant to the two insurers' policies are allegedly located, and whose law it asserts applies to interpretation of both policies. Steamship Mutual opposes both dismissal and a stay on the grounds that the relief Osprey requests would lead to duplicative litigation with possibly inconsistent results, that its claims turn primarily on events centered in Washington, and that its action was the first filed. Dkt. # 20. The American Club has not responded to the instant Motion, although it has since filed its Answer to Plaintiff's Second Amended Complaint. *See* Dkt. # 25.

## DISCUSSION

### I. Motion to Strike

As an initial matter, the Court addresses Plaintiff's Motion to Strike portions of the declaration of Andrew Tobin filed in support of Defendant's Motion to Dismiss. *See* Dkt. # 20, p. 20. Plaintiff moves the Court to strike the several averments in Mr. Tobin's declaration that are prefaced by the language "to the best of my knowledge." *Id.*

Pursuant to Federal Rule of Civil Procedure 56(c)(4), a declaration used to support a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the…declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56 (c)(4). Mr. Tobin is a solicitor of the Senior Courts of England and Whales and counsel of record in London for Defendant Osprey. Tobin Decl. at ¶ 2. He attests that his declaration is made on the basis of personal knowledge of the matters contained therein. *Id.* As it accordingly appears that Mr. Tobin possesses the requisite basis in personal knowledge and competence to testify, and as Plaintiff provides no additional grounds to strike his statements, Plaintiff's Motion is DENIED.

### II. Forum Non Conveniens

#### A. Legal Standard

The district court has discretion to dismiss an action under the doctrine of *forum non conveniens* when litigation in a foreign forum would be more convenient for the parties. *Dole*

*Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). The district court's decision is ordinarily entitled to substantial deference. *Lueck*, 236 F.3d at 1142. Nonetheless, in the typical case, dismissal on the grounds of *forum non conveniens* is considered an "exceptional tool" that must be "employed sparingly." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000). To prevail, Defendant bears the burden to show (1) that there is an adequate alternative forum and (2) that the balance of private and public factors favors dismissal. *Dole Food*, 303 F.3d at 1118. A strong presumption exists in favor of the plaintiff's choice of forum, which ordinarily will not be disturbed unless the private and public interest factors strongly favor trial in the foreign forum. *Id.*; *Piper Aircraft Co. v. Reyno*, 454 U.S. 241 (1981). Taking these factors into account, the court considers whether the defendant seeking dismissal has made "a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience." *Dole Food*, 303 F.3d at 1118.

**B. Adequate Alternative Forum**

As a threshold matter, Osprey, as the party moving for dismissal, bears the burden of proving that an adequate alternative forum is available to Steamship Mutual. *Lueck*, 236 F.3d at 1142. An alternative forum is adequate if it is "capable of 'providing the plaintiff with a sufficient remedy for his wrong.'" *Gutierrez v. Advanced Medical Optics, Inc.*, 640 F.3d 1026, 1029 (9th Cir. 2011) (quoting *Dole Foods*, 303 F.3d at 1118) (internal alterations omitted). An alternative forum is available if "'defendants are amenable to service of process in the foreign forum' and 'when the entire case and all parties can come within the jurisdiction of that forum.'" *Id.*

Here, Plaintiff does not properly dispute the adequacy of England as an alternative forum should it take jurisdiction over this action. Rather, it contests that English courts are not available because "The American Club is not amenable to service of process in London." Dkt. # 20, p. 10. Plaintiff correctly points out that while Osprey's Motion merely addressed the availability of the English forum for litigation of Plaintiff's claims against Osprey, the *forum non conveniens* test clearly requires a showing that the foreign forum can exercise jurisdiction over all parties, including The American Club. *See Gutierrez*, 640 F.3d at 1029. On reply, Osprey does not contest that the English forum's jurisdiction over the entire case is the

ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR STAY – 5

relevant inquiry but nonetheless faults Steamship Mutual for failing to provide "a basis for declaring whether and where The American Club is amenable to service." Dkt. # 22, p. 8. Osprey further asserts that this Court could grant a dismissal conditional on the parties submitting to jurisdiction in England. *Id.* (citing *Gutierrez*, 640 F.3d at 1031).

Osprey misunderstands its burden at this stage of the proceedings. The burden rests initially on Osprey to prove that the English courts are available to Plaintiff to litigate its claims, not on Steamship Mutual to prove otherwise. *See Gutierrez*, 640 F.3d at 1029. While it is undisputed that both Osprey and Steamship Mutual would be subject to jurisdiction in England, Osprey has made no showing that The American Club, a New York corporation, could come within the jurisdiction of the intended foreign forum. Osprey's speculative assertion that "The American Club may very well be amenable to service in England or may consent to the jurisdiction of the English High Court," Dkt. # 22 at p.8, is clearly inadequate to make this showing as it is entirely lacking in evidentiary support. *Cf. Gutierrez*, 640 F.43d at 1020 (discussing extensive evidence proffered by defendant showing that Mexico was an available forum). While The American Club has since filed its Answer, such that there is no question that it is subject to personal jurisdiction in this forum, *see* Dkt. # 25, it has given no indication that it would be willing to consent to litigation in a jurisdiction with respect to which it has no discernible relationship.

The Court also disagrees that it is appropriate in this case to grant a dismissal conditioned on the parties' submitting to jurisdiction in the contemplated alternative forum. Under Ninth Circuit precedent, imposition of conditions on a *forum non conveniens* dismissal may be required "if there is a justifiable reason to doubt that a party will cooperate with the foreign forum." *Gutierrez*, 640 F.3d at 1032 (quoting *Leetsch v. Freedman*, 260 F.3d 1100, 1104 (9th Cir. 2001)). Ninth Circuit precedent does not, however, stand for the proposition that it is appropriate to grant a dismissal with conditions where there has been no showing at all that defendant would be willing to consent to jurisdiction or even that the contemplated forum would have jurisdiction if all parties agreed to submit. *Cf. Gutierrez*, 640 F.3d at 1029 (discussing evidence presented by defendant that "Mexican courts would have jurisdiction of the case if Defendant agreed to submit to its forum"). In other words, the fact that conditions may be required where there is some doubt about a defendant's cooperation does not mean
ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR STAY – 6

that it is appropriate to dismiss a case, albeit with conditions, where no showing has been made that the foreign forum could exercise jurisdiction in the first place. Osprey's suggestion is particularly inappropriate here, where unlike in *Gutierrez* and related cases, the defendant whose cooperation is in question is not the one bringing the motion and has given no indication of its willingness to submit. *Cf. Gutierrez*, 640 F.3d at 1029, *Contact Lumber Co. v. P.T. Moges Shipping CO.*, 918 F.2d 1446, 1450 (9th Cir. 1980); *Ceramic Corp. v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir. 1993).

Osprey's contention that a court can simply grant a dismissal subject to a return-jurisdiction clause where no showing of an available alternative forum has been made would vitiate the first step of the *forum non conveniens* analysis. The Court declines to do so and shall hold Osprey to its burden to show availability. Because Osprey has not carried this burden, its request to dismiss for *forum non conveniens* fails at the outset.

### C. Balance of Private and Public Interest Factors

Even if Osprey had met its burden to show the existence of an adequate alternative forum, the Court nonetheless finds that *forum non conveniens* dismissal would be inappropriate in light of the balance of the private and public interest factors. Where an adequate alternative forum exists, the court "will not disturb the plaintiff's original choice of forum unless the private interest and public interest factors strongly favor dismissal." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1163 (9th Cir. 2006). This high bar is not met in this case.

**(1) Private Interest Factors**

The Court begins by considering factors relating to the parties' private interests. Such factors include:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the costs of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Boston Telecommunications Group, Inc. v. Wood*, 588 F.3d 1201, 1206-07 (9th Cir. 2009) (quoting *Lueck*, 367 F.3d at 1145).

The first three factors, which test the relative convenience of the competing fora, as a whole favor Plaintiff's chosen forum. While Osprey and Steamship Mutual are headquarted in the United Kingdom, The American Club is located in New York and will be greatly inconvenienced by litigating in a forum in which it has no demonstrated relationship. By contrast, the fact that Osprey and Steamship Mutual have chosen to sell insurance policies in Washington mitigates the burden on them of having to litigate in this forum. Critically, the events underlying this case are centered in Washington, where the insured is located and the underlying litigation took place. The witnesses who will testify about critical factual disputes pertaining to the Mr. Sanchez's injuries and the handling of related claims are, for the most part, located in the State of Washington. Such potential witnesses include Shelford personnel involved in claims handling and who were witnesses to Mr. Sanchez's injuries, Shelford's retained doctor, and Mr. Sanchez's treating physicians. *See* Powell Decl at ¶ 11. As the underlying lawsuit was settled without a determination on the merits, witnesses and documentary evidence relevant to its claims will likely be required in this case and are predominantly located in this forum.

As regards the fourth factor, non-party fact witnesses located in Washington are squarely within the subpoena power of this court. The relatively few prospective witnesses who reside in England are likely to be representatives of Osprey and Steamship Mutual. By extension, the costs of bringing primarily Washington-based witnesses to trial will be substantially less if a dismissal is not granted. As to the sixth factor, Osprey offers no authority for its representation that a judgment issued by this Court would not be readily enforceable in England. *Cf. Lavera Skin Care No. America, Inc. v. Laverana GmBH & Co. KG*, 2014 WL 7338739, *8 (W.D. Wash. 2014) (discussing reasons to doubt the enforceability of a judgment rendered against German defendant in a U.S. federal court). Finally, an expeditious and fair resolution of this insurance dispute will be facilitated by resolving claims against both Osprey and The American Club in a single proceeding, thereby avoiding the duplication of time and resources and the risk of inconsistent judgments. The current forum appears to be the only available and practical one in which to do so.

(2) **Public Interest Factors**

The Court also considers factors relating to the public interest, including:

> (1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum.

*Boston Telecomms.,* 588 F.3d at 1211 (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006)).

The first factor requires the Court to "ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." *Id.* This factor favors litigation in Washington, whose passage of the IFCA is illustrative of its policy interest in ensuring that coverage disputes concerning its insureds are handled and resolved fairly. *See* WAC 284-30-300; RCW 48.30.010. The second factor requires this Court to resolve substantive disputes between the parties regarding whether English or Washington law applies to the claims and defenses in this case. The Court declines to resolve conflict of law issues at this stage of the proceedings. *Accord Loya v. Starwood Hotels & Resorts*, 2007 WL 1991163 (W.D. Wash. 2007). To the extent that English law does apply, the difficulty of applying it in this Court is mitigated by the absence of linguistic differences and the concomitant need for translation of legal documents, with the delay and expense that translation would entail. *Cf. Leetsch v. Freedman*, 260 F.3d 1100, 1105 (9th Cir. 2001) (explaining that the district court's lack of familiarity with German law "weighs especially heavily in favor of the German courts. Not only is the district court unfamiliar with German law, were it to hear the case it would be required to translate a great deal of that law from the German language, with all the inaccuracy and delay that such a project would necessarily entail.").

The remaining three factors are essentially a wash. Plaintiff has indicated its intent to withdraw its jury demand in the likely event that this Court determines that it possesses admiralty rather than diversity jurisdiction over this action. *See* Dkt. # 20, p. 14; *see also* Dkt. # 25, ¶¶ 2.1, 8.1 (admitting admiralty jurisdiction but contesting diversity jurisdiction). While this Court's civil docket is undoubtedly congested, Osprey has not demonstrated that the English High Court's docket is any less so. Finally, for the reasons discussed *supra*, cost considerations point toward litigating this action in this forum as well. Ultimately, even were the English forum available to Plaintiff, the Court believes this forum to be the one better suited to resolve this Washington-centered disputed.

**III. Discretionary Stay of Declaratory Judgment Action**

Should the Court decline to dismiss this action for *forum non conveniens*, Defendant Osprey moves the Court to exercise its discretion to enter a stay pending resolution of the English proceeding. This Court has broad discretion whether to exercise jurisdiction over a declaratory judgment action. *See* 28 U.S.C. § 2201(a) ("[A]ny court of the United States….may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). This substantial discretion stems from Congress's intent in enacting the Declaratory Judgment Act to "create[] an opportunity, rather than a duty, [for a district court] to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

Consequently, in a declaratory judgment action, the district court has discretion whether to stay federal litigation in order to defer to a pending state court proceeding under the standards developed by the Supreme Court in *Brillhart* and *Wilton*. *Brillhart*, 316 U.S. at 495; *Wilton*, 515 U.S. at 286. The same broad discretion applies where the parallel action is pending in the courts of a foreign nation. *See Supermicro Computer, Inc. v. Digitechnic, S.A.*, 145 F.Supp.2d 1147, 1150 (N.D. Cal. 2001). The discretion to stay a declaratory judgment action under these circumstances "is an exception to the general rule, stated in *Colorado River*, that federal litigation may be stayed in favor of parallel state proceedings only under exceptional circumstances." *See No. Pacific Seafoods, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2008 WL 53180, *2 (W.D. Wash. 2008) (citing *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (2008)).

As an initial matter, the Court must determine whether the usual stringent *Colorado River* or more discretionary *Brillhart/Warton* standard applies. *See id*. Osprey asserts that Steamship Mutual's claims for contribution, equitable contribution, and unjust enrichment are all contingent on a declaration of rights and duties under the policies, such that this action is primarily declaratory in nature. *See* Dkt. # 13 at pp. 12, 13. Steamship Mutual does not dispute this contention.[2] Regardless, the Court finds it inappropriate to stay this action even under the discretionary *Brillhart* standard.

---

[2] Steamship Mutual examines the *Colorado River* factors though without asserting that this more stringent standard should apply. *See* Dkt. # 20, pp. 18-19.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR STAY – 10

Under *Brillhart* and its progeny, the Court examines the following "touchstone" factors in determining whether to enter declaratory relief: (1) avoiding needless determination of state law issues, (2) discouraging litigants from filing declaratory judgment actions as a means of forum shopping, and (3) avoiding duplicative litigation. *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). The Court may consider a number of additional factors as well, including the potential that "use of a declaratory action will result in entanglement between the federal and state court systems" and the relative convenience of the parties, *id.* at 1225 n. 5, as well as avoidance of "piecemeal litigation," *No. Pacific Seafoods*, 2008 WL 53180, *4. Where parallel state proceedings involving the same parties and issues are pending "at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Dizol*, 133 F.3d at 1225. District courts apply the same standards where there are no "state" law issues presented and the parallel proceeding is instead before a foreign court. *See Supermicro*, 145 F.Supp.2d at 1150, *PhotoThera, Inc. v. Oron*, 2007 WL 4259181, ** 3-4 (S.D. Cal. 2007).

As to the first factor, it appears that issues of English, Washington, and even New York law may apply in this action. While English courts are in a better position to resolve issues of English law, questions of Washington law implicated with respect to the underlying action and of New York law implicated by The American Club's policy, *see* Dkt. At ¶¶ 4.7, are better resolved in this forum. Second, Plaintiff cannot be said to have engaged in forum-shopping, where it was the first to file a declaratory action and did so in the jurisdiction where the insured resides and the underlying action was litigated.

Third, staying or dismissing this action would be more likely to result in duplicative litigation. While this Court appears to possess jurisdiction over all parties and to be capable of resolving this action is an efficient and unified manner, the same cannot be said of the English forum. Dismissal in particular would likely result in duplicative litigation against Osprey in England and The American Club in the United States. Such bifurcated litigation is particularly unwarranted here, where Plaintiff's claims against Osprey and The American Club are intertwined and turn on a determination of many of the same underlying facts, such as the precise date of Mr. Sanchez's alleged second injury and its relationship to the initial 2010 injury. The interest in avoiding piecemeal litigation similarly weighs in favor of proceeding

with all three litigants before this Court. *See John Deere Ins. Co. v. Smith Literage Co., Inc.*, 948 F.Supp. 947, 950 (W.D. Wash. 1996).

Finally and critically, a presumption that the suit should be heard in the foreign forum is not warranted here, where Osprey filed its declaratory action before the English High Court only after Plaintiff filed its initial complaint in this forum. Osprey's assertion that it filed the English declaratory action before it was served with complaint and summons in this case is inapposite, particularly given that Osprey had prior notice of this lawsuit by way of Steamship Mutual's request that it waive formal service of process in this action. *See* Powell Decl. at ¶ 14.

As the relevant factors do not favor staying this litigation, the Court shall exercise its discretion to entertain Steamship Mutual's claims and declines to stay this litigation pending resolution of the later-filed English proceedings.

## CONCLUSION

For the reasons stated herein, the Court hereby ORDERS that Defendant Osprey's Motion to Dismiss for *Forum Non Conveniens* or to Stay (Dkt. # 13) is DENIED in both respects. It is further ORDERED that Plaintiff's Motion to Strike (Dkt. # 20, p.20) is DENIED.

Dated this 11th day of June 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE