THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION LIMITED, a foreign limited liability corporation,<br><br>Plaintiff,<br><br>v.<br><br>OSPREY UNDERWRITING AGENCY LIMITED, AND ITS CERTAIN UNDERWRITERS, a foreign unincorporated entity and/or corporation, and AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., believed to be a New York corporation,<br><br>Defendants. | **Case No.: 15-cv-00043-RSM**<br><br>**DEFENDANT AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.'S JOINDER IN DEFENDANT OSPREY UNDERWRITING AGENCY LIMITED, AND ITS CERTAIN UNDERWRITERS' MOTION TO DISMISS**<br><br>**NOTE ON MOTION CALENDAR:**<br><br>**FEBRUARY 12, 2016** |

The American Club respectfully joins in Osprey's motion to dismiss (Dkt. #49) and provides the following supplemental briefing.

Steamship Mutual's claim for unjust enrichment is a course that has been plotted to circumvent a claim of equitable subrogation. If Steamship Mutual pursued a claim of equitable subrogation it would have to stand in the shoes of Shelford and be subject to the dispute resolution, choice of forum and choice of law requirements in the insurance contracts between

Case No.: 15-cv-00043-RSM
DEFENDANT AMERICAN CLUB'S
JOINDER IN DEFENDANT OSPREY'S
MOTION TO DISMISS - 1

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

Shelford and Osprey, and between Shelford and the American Club. Permitting an insurer to so easily avoid the requirements and limitations imposed upon subrogees threatens to undermine decades of subrogation jurisprudence, to upset the jurisprudential balance that has been struck when an insurer pays what another allegedly owes, and to bestow upon the insurer rights and remedies greater than the insurer's subrogor. Even if the Plaintiff is permitted to avoid the contractual requirements of Shelford's insurance agreements by characterizing its claim as one for unjust enrichment, Steamship defended and indemnified Shelford for Sanchez's 2013 injuries as a volunteer with no legal or moral obligation to do so. Finally, as Osprey has argued, Steamship has not alleged that it obtained a release of Shelford's potential claims against Osprey or the American Club.[1] Thus, Plaintiff has not sufficiently alleged that the American Club or Osprey were "enriched," much less "unjustly enriched."

### A. Plaintiff Should Only Be Allowed to Pursue a Claim for Equitable Subrogation, Not a Claim for Unjust Enrichment

Plaintiff's sole stated cause of action is for unjust enrichment, but if it has a claim at all it must be pursued as a claim for equitable subrogation. The basis for an unjust enrichment claim is that a defendant has obtained a benefit which in equity should be paid to the plaintiff.

---

[1] Like Osprey, the American Club argues that the Plaintiff did not have the authority to settle on behalf of Osprey or the American Club. Furthermore, the settlement agreement obtained by the Plaintiff only purported to release Sanchez's claims against Osprey and the American Club; it did *not* release (but rather specifically reserved) Shelford's claims. Dkt. #50, Exh. A. In Washington, injured third party claimants have no direct cause of action against a defendant's insurers. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 395, 715 P.2d 1133, 1141 (1986); *see also Kiernan v. Zurich Companies*, 150 F.3d 1120 (9th Cir. 1998) (holding that state law determines whether an injured party can bring a direct action against a marine insurer). Thus, Sanchez had no claims against Osprey or the American Club to release, and the release obtained by the Plaintiff in settling the Sanchez lawsuit is meaningless as to Osprey and the American Club. In any event, there has been no allegation that Steamship secured a release from Shelford for Osprey or the American Club when Steamship funded the settlement of Sanchez' claims, funded Shelford's defense, and funded Sanchez' maintenance and cure payments. Consequently, by funding the Sanchez settlement, maintenance and cure, and legal costs, Steamship in fact discharged only its own obligations, and not those of Osprey or the American Club. *See Murphy v. Florida Keys Elec. Co-op Ass'n*, 329 F.3d 1311, 1313-18 (11 Cir. 2003) ("[U]nder the proportionate share approach a settling defendant may not sue a nonsettling, unreleased defendant for contribution.") *See also* cases cited in Osprey's Motion (Dkt. # 49) at 11 – 12. Said differently, by funding the Sanchez settlement but not obtaining a release of Shelford's claims against its insurers, Steamship did not enrich Osprey or the American Club.

Case No.: 15-cv-00043-RSM
DEFENDANT AMERICAN CLUB'S
JOINDER IN DEFENDANT OSPREY'S
MOTION TO DISMISS - 2

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

*Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790, 967 N.E.2d 1177, 1185, 944 N.Y.S.2d 732, 740 (2012). Unjust enrichment does not describe a theory of recovery, but rather an effect: unjust enrichment is "the result of a failure to make restitution under circumstances where it is equitable to do so." *Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 793, 131 Cal.Rptr.2d 347 (2003); *see also McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1059 (C.D. Cal. 2014) ("Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself."). In a broad sense, this general scenario may be present in many cases. *Corsello*, 18 N.Y.3d at 790. However, unjust enrichment should not be used as a catchall cause of action when other claims fail. *Id.*

Instead, parties pursue one of the "various legal doctrines and remedies" for which unjust enrichment is a guiding principle. In the insurance context, such doctrines are contribution,[2] or, relevant here, subrogation. *See* Restatement (Third) of Restitution and Unjust Enrichment II 3, 2 Intro. Note (2011) (restitution takes the form of contribution or subrogation in situations where performance is rendered to a third person); *see also Cashel v. Cashel*, 94 A.D.3d 684, 688, 941 N.Y.S.2d 236, 239 (N.Y. App. Div. 2012) (citing Restatement [Third] of Restitution and Unjust Enrichment § 24, Comment a)) (claim for equitable subrogation is one of the mechanisms by which the law of unjust enrichment reallocates the burden of a given liability); *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*, 119 Wn.2d 334, 341, 831 P.2d 724, 728 (1992) ("Subrogation is an equitable doctrine, the purpose of which is to avoid unjust enrichment."); *Lynch v. Deaconess Med. Ctr.*, 113 Wn.2d 162, 166, 776 P.2d 681, 683 (1989) ("Equitable subrogation is a remedy designed to prevent unjust enrichment.").

---

[2] Plaintiff could not prevail on a theory of contribution because as a matter of law it does not have a common liability with the defendants. *See* Order Granting Motion to Dismiss (Dkt. #38) at 9 – 10.

Case No.: 15-cv-00043-RSM
DEFENDANT AMERICAN CLUB'S
JOINDER IN DEFENDANT OSPREY'S
MOTION TO DISMISS - 3

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

A claim for equitable subrogation allows a party who satisfies another's obligation to recover from the party primarily liable for the extinguished obligation. *Hartford Fire Ins. Co. v. Columbia State Bank*, 183 Wn. App. 599, 609, 334 P.3d 87, 93 (2014) *review denied*, 182 Wn.2d 1028, 347 P.3d 459 (2015). It is "'[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party[.]'" *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 423, 191 P.3d 866, 874 (2008) (citing Black's Law Dictionary 1467 (8th ed. 2004)). Importantly, a subrogating insurer "stands in the shoes" of the insured and is entitled to the same rights and subject to the same defenses as the insured. *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 424, 191 P.3d 866, 874 (2008) (citing *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1292, 77 Cal. Rptr. 2d 296, 303 (1998)). As the court in *Fireman's Fund Ins. Co.* held,

> The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to 'stand in the shoes' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have.

*Fireman's Fund Ins. Co.*, 65 Cal. App. 4th at 1292. Accordingly, as a matter of policy, an insurer such as Plaintiff, should not be permitted to pursue a catch-all claim of unjust enrichment in lieu of a claim for contribution or subrogation. Otherwise insurers gain greater rights for themselves than even their insureds had, avoiding the limits inherent in the elements that must be established in order to pursue claims for contribution or subrogation, the very causes of action adopted by courts to avoid unjust enrichment at the expense of one insurer over another.

In this case, the Plaintiff is alleging that it satisfied an obligation of Shelford's for which Osprey or the American Club was actually liable. The Plaintiff has no rights against

Case No.: 15-cv-00043-RSM
DEFENDANT AMERICAN CLUB'S
JOINDER IN DEFENDANT OSPREY'S
MOTION TO DISMISS - 4

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

Osprey or the American Club that are independent of the obligations owed by Osprey or the American Club to Shelford. Accordingly, Plaintiff is attempting to enforce the obligations allegedly owed by Osprey or the American Club to Shelford, but without having to step into Shelford's shoes and be subjected to the terms of the contracts on which those obligations are based. However, pursuant to the American Club's protection and indemnity rules,[3] any dispute between an insured and the American Club regarding coverage must be resolved according to particular procedures outlined in the rules, including first submitting a Notice of Appeal to the Association's Board of Directors for an adjudication, and only then appealing that decision specifically in the U.S. District Court for the Southern District of New York. *See* Rule 1, Section 48, The American Club, http://www.american-club.com/page/rules (last visited January 14, 2016). Because the Plaintiff is asserting a right that is based upon and derives from Shelford's rights under the American Club's policy, the Plaintiff must be restricted to the rights and remedies available to Shelford, specifically, the requisite procedure, law and venue limitations. Instead, the Plaintiff is attempting to avoid the inconvenience of the contractual obligations that constrained Shelford by asserting a nebulous claim of unjust enrichment. Permitting the Plaintiff's cause of action to proceed, however, risks undermining one of the principle tenets of subrogation law: that the subrogated insurer stands in the shoes of its insured. The Plaintiff should not be permitted to pursue a claim of unjust enrichment instead of a claim for equitable subrogation.[4]

---

[3] As with the American Club's previous motion, these rules are incorporated by reference.

[4] Similarly, if a claim of unjust enrichment is available to insurers who pay a claim they believe should have been paid by other insurers, the insurer could avoid the requirement for a common liability that is an element of a contribution claim. An insurer's causes of action for contribution and subrogation were designed to avoid unjust enrichment, but they are subject to certain carefully crafted judicial limitations. If a cause of action for unjust enrichment is permitted, years of jurisprudence will have been needlessly side-stepped.

Case No.: 15-cv-00043-RSM
DEFENDANT AMERICAN CLUB'S
JOINDER IN DEFENDANT OSPREY'S
MOTION TO DISMISS - 5

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

B. **Plaintiff Acted Under No Legal Obligation to Settle on Behalf of Defendants**

Plaintiff attempts to avoid dismissal by alleging that it had a legal obligation to settle because of Shelford's threat of an Insurance Fair Conduct Act ("IFCA") lawsuit. Dkt. 39 ¶ ¶ 4.11, 4.12, 4.13. As the Court previously noted, "one who settles under threat of civil suit is not a volunteer. [] An insurer's payment is not voluntary simply because the insurer may have a defense to coverage." Dkt. 38 at 11. As support for this proposition, the Court, in its previous order, relied on *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 768, 162 P.3d 1153, 1167 (2007). In fact, the *Jacob's Meadow* case *supports* a finding that the Plaintiff acted as a volunteer in indemnifying the settlement of the Sanchez lawsuit.

In *Jacob's Meadow*, a general contractor, SSB, was sued by a developer for work performed by the subcontractor, S.C. Visions. *Id.* at 749. Eventually, SSB settled the developer's lawsuit, with SSB's insurer, Ohio Casualty, funding the settlement. *Id.* at 750. SSB sought indemnification from S.C. Visions pursuant to a contract. *Id* at 751. S.C. Visions argued that SSB did not have standing to seek indemnification because its insurer funded the settlement as volunteer. *Id.* at 767. S.C. Visions argued that Ohio Casualty was a volunteer because the entity named as the insured on the policy was "Sacotte Construction," not SSB, and thus, SSB was not a named insured. *Id.* Unpersuaded by this argument, the court held there was "ample evidence" in the record indicating that the insured entity went by multiple names, including SSB, and thus SSB could reasonably assert an entitlement to coverage. *Id.* at 768. Accordingly, the court held

> [i]t is foreseeable, then, that Ohio Casualty would have faced suit had it refused to cover the claim against SSB. Accordingly, S.C. Visions' assertion that Ohio Casualty acted as a "mere volunteer" in making payment pursuant to the umbrella policy is unavailing.

*Id*.

Case No.: 15-cv-00043-RSM
DEFENDANT AMERICAN CLUB'S
JOINDER IN DEFENDANT OSPREY'S
MOTION TO DISMISS - 6

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

*Jacob's Meadow* established a standard whereby a threatened lawsuit must be at least foreseeable. In that case a suit was foreseeable: it is foreseeable that an entity insured under a policy would sue for coverage for an otherwise covered claim. Here, as the Plaintiff has already alleged, the Sanchez lawsuit pled two distinct injuries: a 2010 injury and a 2013 injury. *See* Dkt. 39 ¶ 4.4.  The 2013 injury was either a flare-up of Sanchez' 2010 injury, implicating Steamship's policy, or it was a new, separate injury implicating either Osprey's or the American Club's policy.  If it was the former, Plaintiff was solely liable to indemnify Shelford for all of the injuries complained of by Sanchez and is not entitled to relief.[5]  If it was the latter, Plaintiff was not liable at all for the 2013 injury. In that case, the IFCA threat relative to the 2013 injury was groundless and provided no basis for Plaintiff's decision to fund a settlement of the 2013 injury. It is simply not foreseeable that the Plaintiff would have been sued for refusing to cover a claim that did not fall within its policy period. Thus, the Plaintiff either covered the 2013 injury (i.e., it was in actuality a flare up of the 2010 injury); or it did not. If Steamship covered the injury, then it paid what it owed and defendants were not unjustly enriched. If it did not cover the injury, then Steamship's indemnification of Shelford for claims arising out of the 2013 injury was purely voluntary. An empty threat of litigation should not change that. Otherwise, a party who actually paid as a volunteer could hide behind any minor threat of litigation no matter how frivolous, and an insurer could easily circumvent the elements of a contribution claim and of a subrogation claim.[6]

---

[5] *See Savchenko v. Icicle Seafoods, Inc.*, C11-2081-JCC, 2013 WL 5884514, at *4 (W.D. Wash. Oct. 31, 2013, Coughenour, J.) (earlier employer was not entitled to indemnity or contribution from subsequent employer where injured seaman suffered flare ups of earlier injury sustained while plaintiff was employed on earlier employer's vessel).

[6] Steamship's own allegations show that before  receipt of the IFCA letter, it made substantial payments that it alleges were solely due to the 2013 injury.  Many – and perhaps most – of the expenses for which Steamship is seeking reimbursement were actually incurred and paid by Steamship *long before* the IFCA letter was written. *See* Dkt. 39 ¶ 4.15 (alleging $117,566.61 in legal fees and $141,226.02 in maintenance and cure, all allegedly related solely to the 2013 injury) with ¶ 4.3 (Sanchez allegedly suffered a new injury in early 2013), ¶ 4.4 (on May 2, **2013** Sanchez filed suit), ¶ 4.11 (Shelford's coverage counsel writes the IFCA letter on September 25, **2014**),

Case No.: 15-cv-00043-RSM
DEFENDANT AMERICAN CLUB'S
JOINDER IN DEFENDANT OSPREY'S
MOTION TO DISMISS - 7

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

# CONCLUSION

As a matter of law, Plaintiff cannot establish that it settled anything other than its own obligations, that it paid other than as a volunteer, or, importantly, that Osprey or the American Club was "enriched," when the Plaintiff paid to settle all of Sanchez' claims against Shelford without securing a release for Osprey or the American Club. Accordingly, for the aforementioned reasons, and in conjunction with the reasons set forth in the Osprey's Motion to Dismiss, the American Club respectfully joins in moving for dismissal of Plaintiff's Third Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

DATED this 1st day of February, 2016.

NICOLL BLACK & FEIG PLLC

By: /s/  Christopher W. Nicoll
Christopher W. Nicoll, WSBA #20771
/s/  William A. Pelandini
William A. Pelandini, WSBA #11521
Attorneys for Defendant American
Steamship Owners Mutual Protection
and Indemnity Association, Inc.

---

¶ 4.13 (eight days later Steamship extends $500,000 in settlement authority to defense counsel on October 3, **2014**), and ¶ 4.14 (the Sanchez lawsuit settles one month later on November 5, **2014** for $300,000). $258,792.63 in fees and maintenance and cure expenditures could not possibly have been incurred in the approximately 41 days that elapsed between receipt of the IFCA letter on September 25, 2014 and Steamship's decision to settle for $300,000 on November 5, 2014, much less in the *8* days between receipt of the IFCA letter and Steamship's decision to authorize settlement for up to $500,000 on October 3, 2014. Thus, on the face of the Complaint, the IFCA letter had nothing to do with Steamship's decision to pay $258,792.63 in legal fees and maintenance and cure, all of which it alleges were related *solely* to the 2013 injury.

Case No.: 15-cv-00043-RSM
DEFENDANT AMERICAN CLUB'S
JOINDER IN DEFENDANT OSPREY'S
MOTION TO DISMISS - 8

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

# **CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, I electronically filed the foregoing with the Clerk of the Court using the CM/CF system which will send notification of such filing to the following:

*Attorneys for Plaintiff:*

John E.D. Powell, WSBA #12941
JED POWELL & ASSOCIATES, PLLC
7525 Pioneer Way, Suite 101
Gig Harbor, WA  98335
Telephone:  253-561-8791
Email:  jed@jedpowell.com

*Attorneys for Defendant*
*Osprey Underwriting Agency:*

Richard F. Allen, WSBA #2411
COZEN O'CONNOR
999 Third Avenue, Suite 1900
Seattle, WA  98104
Telephone:  206-340-1000
Facsimile:  206-621-8783
Email:  rallen@cozen.com

DATED this 1st day of February, 2016.

NICOLL BLACK & FEIG PLLC

 */s/ Christopher W. Nicoll*
Christopher W. Nicoll, WSBA No. 20771
Attorneys for Defendant American Steamship Owners Mutual Protection and Indemnity Association, Inc.

Case No.: 15-cv-00043-RSM
DEFENDANT AMERICAN CLUB'S
JOINDER IN DEFENDANT OSPREY'S
MOTION TO DISMISS - 9

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555